UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
FLOODBREAK LLC,

                                 Plaintiff,                 **OPINION & ORDER**

      v.                                        23-CV-6185

                                            (Komitee, J.)
T. MORIARTY & SON, INC., and JAMES P.        (Marutollo, M.J.)
MORIARTY JR,

                            Defendants.

-----------------------------------------------------------------------x

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

    In this patent infringement action, Plaintiff Floodbreak LLC alleges that Defendants T. Moriarty & Son, Inc. ("TMS") and James P. Moriarty, Jr. (collectively, "Defendants") directly infringed Plaintiff's U.S. Patent No. 9,752,342 (the "'342 patent") by selling mechanical closure devices ("MCDs") to the New York Metropolitan Transit Authority ("MTA") and that Mr. Moriarty induced TMS's direct infringement. *See* Dkt. No. 37 at 3[1]; *see also* Dkt. No. 36 ¶¶ 1, 13.

    Currently before the Court is Defendants' motion for an order, pursuant to Federal Rule of Civil Procedure 30(b)(4), directing that the deposition of non-party witness, Kevin F. Biebel, be conducted remotely for the witness and all counsel via Zoom or Microsoft Teams. Dkt. No. 37 at 2. For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.**     <u>**Background**</u>

    According to Plaintiff, Mr. Biebel "played a central role in the events that led to this lawsuit—his company, Art Metal Industries, LLC ('AMI'), supplied to TMS the 398 [MCDs] at issue in this case." Dkt. No. 37 at 6. Plaintiff had previously brought a lawsuit against Mr. Biebel and AMI for infringing the '342 patent. *See* Dkt. No. 36 ¶ 31 (citing *FloodBreak, LLC v. Art Metal*

---

[1] Page citations are to the ECF-stamped page numbers.

*Industries, LLC*, No. 18-CV-503 (SRU) (D. Conn.) ("the Connecticut Litigation"). According to Plaintiff, "on July 21, 2022, AMI, Biebel, and AMI's parent company, Diego Trust, LLC [], stipulated to the validity and enforceability of the '342 patent." *Id.* ¶ 34. The stipulation allegedly "specified that they directly infringed and induced infringement of at least claims 1, 4–5, 8, 10, 14, and 20–24 of the '342 patent by supplying MCDs to Moriarty Inc., [a construction company owned by Mr. Moriarty]; that in doing so they acted willfully; and that their infringement damaged [Plaintiff] in the amount of at least $17,811,202." *Id.* ¶¶ 4, 34.

The parties note that Mr. Biebel pled guilty to tax-related offenses and will begin his prison sentence on January 7, 2025. *See* Dkt. No 37 at 3. Mr. Biebel resides in South Carolina under parole restrictions in connection with his guilty plea. *See id.*

On October 2, 2024, Defendants served a third-party subpoena on Mr. Biebel for a deposition at 10:00 a.m. on November 7, 2024 at 1104 Brooks Willis Drive, Hardeeville, South Carolina. *See* Dkt. No. 37-1 at 2. On the face of the subpoena, however, Defendants noted that "Defendants will attempt to obtain a stipulation of the parties and/or an Order from the Court to conduct the deposition by Zoom or Microsoft Teams pursuant to Rule 30(b)(4)." *Id.*

In scheduling Mr. Biebel's deposition, Defendants spoke with Mr. Biebel's attorney, who asked for the accommodation of proceeding with the deposition remotely for several reasons. *See* Dkt. No. 37 at 3. Specifically, according to Defendants, Mr. Biebel's attorney claims that "Mr. Biebel is now destitute and cannot afford to fly his lawyer to Hardeeville, South Carolina, where he resides under parole restrictions." *Id.* Additionally, according to Defendants, Mr. Biebel "was recently diagnosed with and received treatment for malignant melanoma" and also has "healthcare responsibilities for his wife, who has Stage 4 cancer and resultant unstable diabetes." *Id.* at 4.

Further, Defendants note that Mr. Biebel's availability is limited given his order to report to prison on January 7, 2024.  *Id.*

Following a conferral with Defendants about the method of deposing Mr. Biebel, Plaintiff served, on October 8, 2024, a separate third-party subpoena on Mr. Biebel for a deposition at 9:00 a.m. on November 7, 2024 at 1104 Brooks Willis Drive, Hardeeville, South Carolina.  *See* Dkt. No. 37-5 at 2.  Plaintiff also requested the production of nine categories of documents from Mr. Biebel and AMI as part of its subpoena.  *See id.* at 2, 8–10.

Plaintiff's counsel has offered to schedule Mr. Biebel's deposition at a neutral location near Mr. Biebel's home in South Carolina.  *See* Dkt. No. 37 at 6.  Plaintiff's counsel is amenable to Defendants or Mr. Biebel's counsel appearing remotely at Mr. Biebel's deposition, but Plaintiff wishes to conduct its "cross-examination" in person.  *See id.* at 7.  Defendants, however, object and argue that no attorney should be permitted to depose Mr. Biebel in person, particularly if the Court permits a remote deposition to occur.  *See id.* at 3–5.

## II.    Discussion

The Federal Rules of Civil Procedure specifically provide for the taking of depositions by telephone or other remote means.  *See* Fed. R. Civ. P. 30(b)(4).  "Since Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request [for a remote] deposition . . . the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts."  *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020) (citations omitted).

Under Rule 30.2 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York, "[t]he motion of a party to take the deposition of an adverse party by

telephone or other remote means will presumptively be granted."  Authorization to take telephonic or virtual depositions does not depend upon the hardship incurred by the applicant, *see Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. 2006); instead, it depends upon the hardship of the deponent.  *See RP Family, Inc. v. Commonwealth Land Title Ins. Co.*, No. 10-CV-1149 (DLI) (CLP), 2011 WL 6020154, at *3 (E.D.N.Y. Nov. 30, 2011).

Here, the Court finds that a fully remote deposition of Mr. Biebel is warranted based on the state of his health and finances, as well as the parole restrictions of his upcoming prison term. *See* Dkt. No. 37 at 3-6 (explaining the hardships imposed on Mr. Biebel to participate in an in-person deposition); *see also* Dkt. No. 37-3.

Plaintiff's argument that a remote proceeding would prejudice its "right to examine [Mr. Biebel] in the deposition in the usual way" (Dkt. No. 37 at 8) is unpersuasive, as courts have concluded that video depositions achieve such ends.  *See, e.g., In Re Terrorist Attacks*, 337 F.R.D. at 578 ("Deposition by video allows the party 'to view [the witness's] demeanor during questioning'" (citations omitted)); *see also Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 575–76 (S.D.N.Y. 2020) ("If the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless").  "Although the lawyers might gain some marginal value by observing the witness in person, ultimately the purpose of a deposition is to gather information and commit a witness's testimony.  The product of the deposition is the transcript and video footage, which will be unaffected whether the deposition is conducted remotely or in person."  *In re Terrorist Attacks*, 337 F.R.D. at 579; *see also Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 17-CV-816 (LGS) (KHP), 2017 WL 10456190, at *3 (S.D.N.Y. Nov. 22, 2017) ("remote depositions are a presumably valid means of discovery").

Indeed, Plaintiff's entire argument is belied by the fact that Plaintiff has recently taken Mr. Biebel's deposition on multiple occasions via Zoom, to wit: Plaintiff deposed Mr. Biebel in the Connecticut Action on September 21, 2021 and August 15, 2024, respectively, via Zoom.  *See* Dkt. No. 37-4 at 2, 3.

Although Plaintiff's counsel volunteers to travel to South Carolina to be physically present during the deposition, the interests of fairness and the furtherance of a "just, speedy, and inexpensive" resolution favors that the deposition be remote for all parties. *See* Fed. R. Civ. P. 1; *see also Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 26 (E.D.N.Y. 2001) ("The language and spirit of the Federal Rules of Civil Procedure provide trial judges with the authority to structure trials efficiently and fairly"); *Doubleday & Co. v. Curtis*, 763 F.2d 495, 502 (2d Cir. 1985) (stressing that the Federal Rules of Civil Procedure "embody the spirit of fairness").

Finally, Plaintiff's concern that a video deposition would prevent it from obtaining the necessary documents to cross-examine Mr. Biebel is without merit.  "[C]ourts have found that exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using videoconference technology to share documents and images quickly and conveniently." *Rouviere*, 471 F. Supp. at 575 (citation omitted); *see also United States for Use & Benefit of Chen v. K.O.O. Constr., Inc.*, 445 F. Supp. 3d 1055, 1057 (S.D. Cal. 2020) (collecting cases).

Notwithstanding the above, Mr. Biebel shall abide by Plaintiff's subpoena and produce all responsive documents to Plaintiff in advance of the deposition, and by no later than **November 4, 2024**.

Defendants are ordered to serve a copy of this Opinion and Order on Mr. Biebel's counsel by **October 24, 2024**.

Dated: Brooklyn, New York
      October 23, 2024

**SO ORDERED.**

*s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge